UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JACK L. STURGILL, SR.           :    Case No. 1:08-cv-687
                                :
        Plaintiff,              :    Judge Sandra S. Beckwith
                                :    Magistrate Judge Timothy S. Black
vs.                             :
                                :
COMMISSIONER OF                 :
SOCIAL SECURITY,                :
                                :
        Defendant.              :


**REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S NON-DISABILITY FINDING BE FOUND SUPPORTED BY SUBSTANTIAL EVIDENCE, AND AFFIRMED; AND (2) THIS CASE BE CLOSED**

This is a Social Security disability benefits appeal. At issue is whether the

administrative law judge ("ALJ") erred in finding Plaintiff "not disabled" and therefore

unentitled to supplemental security income ("SSI") and disability insurance benefits

("DIB"). (*See* Administrative Transcript ("Tr.") (Tr. 17-34) (ALJ's decision)).

**I.**

On July 28, 2003,[2] Plaintiff filed applications for SSI and DIB, alleging that he

became disabled on April 9, 2002 due to cardiac problems. (Tr. 85, 185, 561).

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

[2] Plaintiff filed a prior application for benefits on June 19, 2002, which was denied on August 13, 2002. Plaintiff did not appeal.

Upon denial of Plaintiff's claims on the state agency level, he requested a hearing *de novo* before an ALJ. (Tr. 49, 54, 57, 567, 572, 576). A hearing was held on April 19, 2007, at which Plaintiff appeared with counsel and testified. (Tr. 577-620).

The ALJ issued a partially favorable decision on June 14, 2007. He found that Plaintiff was disabled for the period from April 9, 2002, through January 18, 2005, but not after that date. (Tr. 13-34). Plaintiff requested review of the unfavorable portion of the decision to the Appeals Council. (Tr. 11). The Appeals Council denied review on August 26, 2008, making the ALJ's decision the final decision of the Commissioner. (Tr. 6-8).

Plaintiff was 41 years old at the time the ALJ found that his disability had ended. (Tr. 32). He has a high school equivalent education and has worked in the past as a carpenter and a machine operator. (Tr. 146, 131, 160, 586, 615).

The ALJ's "Findings," which represent the rationale of his decision, were as follows:

1. The claimant met the insured status requirements of the Social Security Act as of April 9, 2002, the date the claimant became disabled.

2. The claimant has not engaged in substantial gainful activity since April 9, 2002, the alleged onset date (20 CFR 404.1520(b), 404.1571, *et seq*, 416.920(b), and 416.971, *et seq*).

3. At all times relevant to this decision, the claimant has had the following severe impairments: obesity, congestive heart failure, status-post angioplasty and stent placement, diabetes, depressive and anxiety disorders, and questionable alcohol abuse (20 CFR 404.1520(c) and 416.920(c)).

4.	From April 9, 2002 through January 18, 2005, the period during which the claimant was disabled, the severity of the claimant's congestive heart failure met the criteria of section 4.02 of 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d) and 416.920(d)).

5.	The claimant was under a disability, as defined by the Social Security Act, from April 9, 2002 through January 18, 2005 (20 CFR 404.1520(d) and 416.920(d)).

6.	Medical improvement occurred as of January 19, 2005, the date the claimant's disability ended (20 CFR 404.1594(b)(1) and 416.994(b)(1)(i)).

7.	Beginning on January 19, 2005, the claimant has not had an impairment or combination of impairments that meets or medically equals one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1594(f)(2) and 416.994(b)(5)(i)).

8.	The medical improvement that has occurred is related to the ability to work because the claimant no longer has an impairment or combination of impairments that meets or medically equals a listing (20 CFR 404.1594(c)(3)(i) and 416.994(b)(2)(iv)(A)).

9.	After careful consideration of the entire record, the undersigned finds that, beginning on January 19, 2005, the claimant has had the residual functional capacity to perform the physical exertion and nonexertional requirements of light work activity, but he should not perform prolonged or constant walking; should not climb ladders, ropes, or scaffolds or be exposed to hazards, such as microwaves or similar potentially hazardous electrical frequencies, but typical electronics, such as radios, computes, etc., are not excluded; should not perform more than occasional kneeling, crawling, crouching, stooping, climbing, or balancing; should not have contact with the general public as a work requirement; should not have more than occasional contact with co-workers and supervisors, such contact not essential, but incidental to the tasks; and should not be required to participate in tasks requiring teamwork with others.

10.	Since January 19, 2005, the claimant has not been able to perform past relevant work (20 CFR 404.1565 and 416.965).

11.   The claimant was born on April 27, 1963 and was 41 years old, which is defined as a younger individual age 18-44, on January 19, 2005, the date disability ended (20 CFR 404.1563 and 416.963).

12.   The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

13.   Beginning on January 19, 2005, transferability of jobs skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

14.   Beginning on [January 19, 2005], considering the claimant's age, education, work experience, and residual functional capacity, the claimant has been able to perform a significant number of jobs in the national economy (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

15.   The claimant's disability ended on January 19, 2005 (20 CFR 404.1594(f)(8) and 416.994(b)(5)(vii)).

(Tr. 21-35).

In summary, the ALJ concluded that Plaintiff was no longer under a disability as defined by the Social Security Regulations and was therefore not entitled to SSI or DIB. (Tr. 35).

On appeal, Plaintiff argues that: (1) the ALJ erred because despite the fact that his medical condition has improved, he is still disabled; and (2) the ALJ erred because the opinions of the treating physicians are inconsistent with his ability to sustain work activity. (Doc. 13 at 8-12). Each argument will be addressed in turn.

## II.

The Court's inquiry on appeal is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). In performing this review, the Court considers the record as a whole. *Hephner v. Mathews,* 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found plaintiff disabled. As the Sixth Circuit has explained:

> "The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts. If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm."

*Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).

The claimant bears the ultimate burden to prove by sufficient evidence that he is entitled to disability benefits. 20 C.F.R. § 404.1512(a). That is, he must present sufficient evidence to show that, during the relevant time period, he suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

## A.

For his first assignment of error, Plaintiff maintains that despite his improved condition, he continues to be disabled.

The record reflects that:

In May 2002, Plaintiff reported to the emergency room complaining of chest pain. (Tr. 178). He was diagnosed with a congestive heart failure, and nine days later underwent a coronary angioplasty and stent deployment. (Tr. 178, 231).

In December 2002, Plaintiff again reported to the emergency room complaining of chest pain after lifting weights. (Tr. 280). The attending physician thought that Plaintiff's muscles may have been deconditioned, and that he may have experienced pain after "breathing in deep air." (*Id*.)

In January 2003, Plaintiff was admitted to the hospital with shortness of breath, and it was noted that "[o]ver the past several weeks, the congestive heart failure has become decompensated and he has noted progressive dyspnea [shortness of breath] on exertion." (Tr. 285). His dyspnea was rated at class IV. (*Id*.) He was discharged three days later with an ejection fraction of 30%. (Tr. 284).

In May 2003, Plaintiff underwent implantation of a cardioverter defibrillator and pacemaker. (Tr. 374).

In October 2004, Dr. Jeffrey Jarrett, Plaintiff's treating physician, wrote a letter to Plaintiff's attorney listing Plaintiff's diagnoses and detailing his treatment. (Tr. 423). He

then opined that Plaintiff's "employment ability is extremely poor. With his multiple restrictions from his medical difficulties, I do not see that he could even perform on a daily basis light or sedentary type work . . . . I do not foresee any time in the future that this would possibly change." (Tr. 423). Dr. Jarrett also enclosed a "Physical Assessment for Work-Related Activities" form, assessing that Plaintiff could occasionally lift eleven to twenty pounds, but could stand/walk for no more than one hour in a work day, and sit for only four hours, citing Plaintiff's "very poor stamina." (Tr. 424).

A January 19, 2005, adenosine stress test showed an ejection fraction of 41%. (Tr. 522). In May 2005, Dr. Jarrett wrote that Plaintiff "[p]resently . . . is unable to be involved in gainful employment because of multiple medical conditions. It is unsure at this time whether he will be able to return to work in the future but for the next two months he will be unable to work and I do not foresee that changing within the next two months." (Tr. 421).

Also in May 2005, Plaintiff was seen by cardiologist Ajay Reddivari, who observed that Plaintiff was "doing quite well." (Tr. 528). Dr. Reddivari noted that Plaintiff's ejection fraction was at 40%, after having previously been at 30%. (*Id*.) Plaintiff's blood pressure was at 118/70, his heart rate was 76, and his total cholesterol was 156. (*Id*.) Dr. Reddivari listed, among other diagnoses, class II New York Heart Association ("NYHA"), cardiac heart failure, obesity, and tobacco abuse, and asked to see Plaintiff again in three months. (*Id*.)

In August 2005, Dr. Reddivari observed that Plaintiff was still "doing quite well"; his blood pressure was 108/70, and his heart rate was again at 76. (Tr. 527). Dr. Reddivari asked to see Plaintiff in six months. (*Id.*)

In January 2006, Dr. Reddivari noted that Plaintiff was "doing quite well," with continuing class II NYHA cardiac heart failure. (Tr. 521). An echocardiogram showed an ejection fraction of 35-40%, and an adenosine stress test showed an ejection fraction of 39%. Plaintiff's blood pressure was 100/70, and his heart rate was 84. (*Id.*) Dr. Reddivari changed Plaintiff's medication (from Lopressor to Coreg), and asked to see him again in three to four weeks. (*Id.*)

At an appointment with his counselor in April 2006, Plaintiff reported that he was "busy fixing up the house and building a garage." (Tr. 545).

At the hearing, Plaintiff stated that he was five feet eleven inches tall, and that he weighed about 300 pounds at the hearing, having gained about 70 pounds in the past year from "[n]ot being physical." (Tr. 583). Plaintiff stated that he could not be around any sort of electrical magnetic devices because of his pace maker/defibrillator. (Tr. 607). Also, he was told not to do anything stressful, including not lifting over 30 pounds, to reduce the risk of setting off his defibrillator. (Tr. 607, 611). Plaintiff said he could dress himself, and do "normal every day things around the house," but did not do very much yard work or work on cars. (Tr. 612). He thought he could walk half a block before his leg began to hurt and he became short of breath. (*Id.*)

To receive SSI benefits, an individual must be unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that could be expected to result in death or to last for at least twelve months. *See* 42 U.S.C. § 423(d)(2)(A); *Barnhart v. Walton*, 535 U.S. 212, 218-22 (2002). An individual's disability ends when there is substantial evidence demonstrating that his or her impairment(s) has medically improved such that he or she is now able to engage in substantial gainful activity. *See* 42 U.S.C. § 423 (f). In addition, there is no presumption of a continuing, non-improving impairment. *See* 42 U.S.C. § 423 (f); *Meredith v. Bowen*, 833 F.2d 650, 655 (7th Cir. 1987) (reiterating that there is no presumption that an impairment continues).

Thus, the Regulations include an eight-step sequential process to determine whether an individual remains disabled:

1. If the claimant is engaging in substantial gainful activity, his disability will be found to have ended;

2. If the claimant is not engaged in substantial gainful activity, the claimant's disability will be found to continue if his impairment or combination of impairments meets or equals the severity of an impairment listed in 20 C.F.R. pt. 404, App. 1 (Listings);

3. If the claimant's impairment(s) does not satisfy a listing, then the agency must determine whether there has been medical improvement as shown by a decrease in medical severity. If there has been a decrease, then the evaluation proceeds to step 4; if the medical severity has not decreased, then the evaluation proceeds to step 5;

4. Having found medical improvement by a decrease in medical severity, the agency must determine whether the improvement is related to the

claimant's ability to do work, that is, whether or not there has been an increase in the RFC based on the impairment that was present at the time of the most recent favorable medical determination. If the improvement does not relate to the claimant's ability to work, then the evaluation proceeds to step 5; and if it does so relate, then the evaluation proceeds to step 6;

5.      Having found either that there was no medical improvement (step 3), or that the medical improvement is not related to the claimant's work ability (step 4), the agency next considers whether any exceptions apply;

6.      Having found that the claimant's medical improvement is related to his ability to work (step 4), or that a particular exception applies (step 5), the agency must determine if the claimant currently has a severe impairment. If the claimant does not have a severe impairment, he no longer is disabled;

7.      If the claimant is found to have a severe impairment, the agency will assess his RFC based on his current impairment(s) and, if the claimant can perform his past work in light of his new RFC, the claimant is no longer disabled; and

8.      If the claimant can no longer perform his past work, the agency will find the claimant is not disabled if he can perform other work, given his RFC, age, education, and vocational experience.

*See* 20 C.F.R. § 404.1594(f)(1)-(8).[3]

Here, after finding that Plaintiff was disabled from April 2002 until January 18, 2005, the ALJ found that Plaintiff had experienced medical improvement as of January 19, 2005 because his ejection fractions had increased, that this improvement was related to his ability to work, and that this work-related improvement in his condition resulted in an RFC to perform a restricted range of light work.  (Tr. 22-23, 27).

---

[3]      Because the regulations for DIB and SSI are nearly identical with respect to the evaluation of disability, the Commissioner referred only to the DIB regulations.  The DIB regulations for evaluating disability are found at 20 C.F.R, Part 404, Subpart (404.15xx).  The corresponding SSI regulations are available at 20 C.F.R., Part 416, Subpart I (416.9xx).

Plaintiff does not dispute that the ALJ reasonably found that as of January 19, 2005, due to improved ejection fraction results, his condition had medically improved, and that he no longer met Listing 4.024. (Doc. 13 at 9). Nevertheless, he argues that the ALJ erred in finding that the mere fact that his medical condition no longer met a listing also meant that his improvement was work-related. However, Plaintiff's argument fails for two reasons.

First, the Agency has designated certain medical conditions as listings such that if a person's condition meets the criteria of any of the listings in Appendix 1 to Subpart P of Part 404, then that person is automatically determined to be disabled and incapable of sustaining substantial gainful employment. 20 C.F.R. § 404.1520(d). Thus, given the direct link between listed impairments and the ability to work, if a person's impairment was initially severe, but no longer is, then it is natural to infer that the person's medical improvement is related to his or her ability to work.

Second, while the ALJ did state that "[t]he medical improvement that has occurred is related to the ability to work because [Plaintiff ] no longer has an impairment . . . that meets . . . a listing," the ALJ did not stop at this finding, as Plaintiff suggests, and automatically conclude that "his disability ceased." (Doc. 13 at 9). Rather, as required by Agency regulations, the ALJ, having already found that Plaintiff had severe impairments during all times relevant to the decision, then went on to assess Plaintiff's RFC in light of his medical improvement. Here, the ALJ noted Plaintiff's class II mild congestive heart failure classification; cardiolite studies showing no evidence of

myocardial ischemia; Dr. Reddivari's repeated observation that Plaintiff was "doing quite well;" negative cardiac examinations and stable coronary status; diabetes that was under adequate control with no endorgan damage; a return to lifting weights; no allegations of side effects from medication; and notes from Plaintiff's counselor that he had been fixing up his house, building a garage, and taking family vacations. (Tr. 29, 31, referencing Tr. 420, 512, 527, 545). *See also* 20 C.F.R. § 404.1594(f)(6-8).

In response, Plaintiff argues that he "was described in much the same way during the period he was found disabled," (e.g., lifting weights, class II congestive heart failure), and proffers other pieces of evidence, such as consistent assessments of severe ischemic cardiomyopathy and left ventricular dysfunction, to suggest that he was similarly disabled both before and after January 19, 2005. However, the undersigned finds that while certain assessments and diagnoses remained the same throughout the relevant time period, others improved, most notably, his ejection fractions. In sum, in finding that Plaintiff's congestive heart failure was no longer of listing-level severity, and then proceeding to evaluate the resulting medical improvement and related evidence to ascertain Plaintiff's current RFC, the ALJ adequately established that Plaintiff's medical improvement was related to his ability to work.

Accordingly, the ALJ's decision is supported by substantial evidence and it should be affirmed.

## B.

For his next assignment of error, Plaintiff claims that the ALJ erred because the opinions of the treating physicians are inconsistent with an ability to sustain work

activity. Specifically, Plaintiff argues that the ALJ improperly weighed Dr. Jarrett's October 2004 opinion, and that the ALJ completely overlooked a statement of disability from Dr. Reddivari in May 2005. (Doc. 13 at 10-12).

With respect to Dr. Jarrett's October 2004 opinion, Plaintiff asserts that the ALJ wrongly equated Dr. Jarrett's conclusion, that Plaintiff lacked the stamina to stand or walk more than an hour per work day, with Plaintiff being "deconditioned." (Doc. 13 at 11, referencing Tr. 31, 424). However, the ALJ's assessment pointed to the fact that a vague, conclusory description, such as "poor stamina," has limited usefulness to an ALJ in terms of ascertaining a claimant's RFC. Indeed, "'[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give [it]." 20 C.F.R. § 404.1527. And, "[t]he better an explanation a source provides for an opinion, the more weight we will give [it]."

Plaintiff also claims that the ALJ discounted Dr. Jarrett's opinion for being inconsistent with the subsequent, improved ejection fraction results. However, this assertion is misplaced to the extent that the ALJ found Dr. Jarrett's opinion inconsistent not only with the more recent ejection fraction results, but also with other record evidence, primarily evidence from January 2005 onward. Indeed, the ALJ never limited his finding of inconsistency to the ejection fraction results; rather, he more broadly reflected that the opinion was inconsistent with "the objective and clinical findings of record showing an increase in the claimant's functional capacity." (Tr. 32).

As explained above, the ALJ highlighted a whole range of evidence, including

Plaintiff's activities, his NYHA class II congestive heart failure classification, and negative cardiac examinations and stable coronary status, in detailing Plaintiff's medical improvement. *See* 20 C.F.R. § 404.1527(d)(1-6) (outlining various factors for weighing opinion evidence, including consistency with the record as a whole).

Additionally, Plaintiff claims that in May 2005, Dr. Jarrett "affirmed" his October 2004 opinion. (Doc. 13 at 11, referencing Tr. 421). However, while Dr. Jarrett did opine in May 2005 that Plaintiff was "unable to be involved in gainful employment," he also went on to clarify that he was "unsure at this time whether he will be able to return to work in the future but for the next two months he will be unable to work." (Tr. 421). When these statements are juxtaposed with Dr. Jarrett's October 2004 opinion that he did not "foresee any time in the future" that Plaintiff could work, it appears that Dr. Jarrett was acknowledging that Plaintiff's condition was improving, rather than affirming his earlier belief that Plaintiff would likely never be able to return to work. (Tr. 425). Finally, with respect to Dr. Redivarri's cursory May 2005 statement that Plaintiff was "unable to work," the ALJ did not "miss[] the brief note," as Plaintiff contends (Doc. 13 at 12, referencing Tr. 416). Instead, the ALJ found that the opinion was inconsistent with Dr. Redivarri's diagnosis of NYHA class II congestive heart failure and stable cardiac status findings. (Tr. 31).

Moreover, the ALJ was further justified in discounting Dr. Redivarri's conclusory opinion because it lacked objective support and explanation, and addressed an ultimate issue, (whether Plaintiff was disabled), which determination is reserved to the Agency.

(Tr. 416).  *See* 20 C.F.R. § 404.1527(d)(1-6) (outlining various factors for weighing opinion evidence, including explanations and objective support); 20 C.F.R. § 404.1527(e) (addressing medical source opinions on issues reserved to the Agency: "A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled.").

Therefore, the ALJ's findings are supported by substantial evidence.

## III.

For the foregoing reasons, Plaintiff's assignments of error are unavailing.  The ALJ's decision is supported by substantial evidence and should be affirmed.

## IT IS THEREFORE RECOMMENDED THAT:

The decision of the Commissioner, that Plaintiff was not entitled to supplemental security income and disability income benefits, be found **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **AFFIRMED**; and, as no further matters remain pending for the Court's review, this case be **CLOSED.**


Date:   October 27, 2009               s/ Timothy S. Black
                                       Timothy S. Black
                                       United States Magistrate Judge

JACK L. STURGILL, SR.,                    :          Case No. 1:08-cv-687
                                          :
          Plaintiff,                      :          Judge Sandra S. Beckwith
                                          :          Magistrate Judge Timothy S. Black
vs.                                       :
                                          :
COMMISSIONER OF                           :
SOCIAL SECURITY,                          :
                                          :
          Defendant.                      :

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written

objections to the proposed findings and recommendations within **10 DAYS** after being

served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(e), this

period is automatically extended to **13 DAYS** (excluding intervening Saturdays, Sundays,

and legal holidays) when this Report is being served by mail and may be extended further

by the Court on timely motion for an extension.  Such objections shall specify the

portions of the Report objected to and shall be accompanied by a memorandum of law in

support of the objections.  A party may respond to another party's objections within **10**

**DAYS** after being served with a copy thereof.  Failure to make objections in accordance

with this procedure may forfeit rights on appeal.  *See United States v. Walters,* 638 F. 2d

947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 106 (1985).