**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

Jack L. Sturgill,              )
                               )
      Plaintiff,         ) Case No. 1:08-CV-687
                               )
  vs.                          )
                               )
Michael J. Astrue,             )
Commissioner of Social         )
Security,                      )
                               )
      Defendant.         )

O R D E R

This matter is before the Court on Magistrate Judge Black's Report and Recommendation of October 27, 2009 (Doc. No. 21) and Plaintiff's objections to the Report and Recommendation (Doc. No. 22). In his Report and Recommendation, Magistrate Judge Black concluded that the Administrative Law Judge's ("ALJ") determination that Plaintiff's disability ended on January 19, 2005, and thus that he was only entitled to a closed period of supplemental security income and disability income benefits, was supported by substantial evidence. Therefore, Magistrate Judge Black recommended that the ALJ's decision be affirmed and the case be closed on the docket of the Court. For the reasons that follow, Plaintiff's objections to the Report and Recommendation are not well-taken and are **OVERRULED**. The Court **ADOPTS** the Report and Recommendation. The Court concludes that the ALJ's determination that Plaintiff's disability ended on January 19,

2005 was supported by substantial evidence.  Accordingly, the
ALJ's determination that Plaintiff is not disabled is **AFFIRMED.**

## I. Background

A summary of the record is sufficient for purposes of
resolving Plaintiff's objections to the Report and
Recommendation.

Plaintiff Jack Sturgill was 41 years old at the time
the ALJ issued his decision.  Plaintiff's past relevant work was
as a carpenter, a job that was performed at the medium level of
exertion.

In May 2002, Plaintiff Jack Sturgill presented to the
emergency room complaining of chest pain and was diagnosed with
congestive heart failure.  Shortly afterward he had a coronary
angioplasty and a stent deployment.  In January 2003, Plaintiff
was admitted to the hospital after complaining of shortness of
breath and it was noted that his congestive heart failure had
decompensated and that he had progressive dypsnea (shortness of
breath" on exertion.  At the time, his ejection fraction, which
is a measure of functioning of the blood-pumping left ventricle,[1]
was 30%.  In May 2003, Plaintiff was implanted with cardioverter
and a pacemaker.  By January 19, 2005, however, Plaintiff's
ejection fraction had improved to 41%.  The ALJ noted that since

---

[1] See Diamond v. Commissioner of Social Sec., 154 Fed. Appx. 478, 480 (6th Cir. 2005).  A normal ejection fraction is greater than 55%.  Id.

this time, the medical records show that Plaintiff's ejection fraction has stabilized between 39% and 41%.

Plaintiff filed a claim for supplemental security income and disability insurance benefits on July 28, 2003. Plaintiff alleged an onset date of disabiility of April 9, 2002, due to, <u>inter alia</u>, congestive heart failure. In his decision, the ALJ also found that Plaintiff has the following severe impairments: obesity, diabetes, depressive and anxiety disorders, and questionable alcohol abuse. Tr. 21. The ALJ determined that Plaintiff is not disabled under the Social Security regulations due to these latter impairments and that aspect of his decision is not before the Court.

The ALJ did determine, however, that Plaintiff was disabled as a result of congestive heart failure from April 9, 2002 through January 18, 2005. The ALJ concluded that during this period, Plaintiff's congestive heart failure met the listing at § 4.02 of 20 C.F.R. Part 404, Subpart P, Appendix 1 because his ejection fraction was less than 30% and he was unable to complete a stress test at a level of 5 MET's without dypsnea or fatigue.

The ALJ concluded, however, that after January 18, 2005 Plaintiff's congestive heart failure no longer met § 4.02 because his ejection fraction was greater than 30%. The ALJ further determined that the improvement in ejection fraction was related

3

to his ability to work.  Therefore, the ALJ went on to consider whether Plaintiff is capable of engaging in substantial gainful activity.  In this aspect of his analysis, the ALJ concluded that although Plaintiff cannot perform his past relevant work, he does have the residual functional capacity ("RFC") to perform a restricted range of light work.  Based on the testimony of the vocational expert, the ALJ found that there are a significant number of jobs available that Plaintiff can perform given his RFC.  Therefore, the ALJ concluded that Plaintiff's disability ended on January 19, 2005.

The Appeals Council denied Plaintiff's request for review of the ALJ's partially unfavorable ruling, making the ALJ's decision the final decision of the Commissioner.  Plaintiff then filed a timely complaint for review of the ALJ's decision raising two assignments of error.  First, Plaintiff alleged that the ALJ erred in determining that his improvement in ejection fraction was related to his ability to work.  Second, Plaintiff alleged that the ALJ's determination that he has the residual functional capacity to perform a restricted range of light work was not supported by substantial evidence.  Specifically, Plaintiff claimed that the ALJ erred in rejecting the opinions of his treating physicians, who both stated that Plaintiff is unable to perform any work because of multiple conditions, including his cardiac impairments.

4

In his Report and Recommendation, Judge Black rejected Plaintiff's first assignment of error on the grounds that it was reasonable for the ALJ to infer that once his impairment no longer met the listing, the improvement was related to his ability to work. With respect to the second assignment of error, Judge Black determined that the ALJ's finding of non-disabiility was supported by substantial evidence. Judge Black found that the opinions of the treating physicians were conclusory or of limited usefulness to the ALJ because of their vagueness. Judge Black also concluded that the ALJ highlighted a range of evidence supporting his decision, including Plaintiff's activities, such as building a garage and taking family vacations, the fact that one of his treating physicians categorized his condition as Class II congestive heart failure pursuant to the New York Heart Association ("NYHA") guidelines (indicating that the condition only imposes slight limitations on physical activity), and that his coronary status was stable.

Plaintiff filed timely objections to Magistrate Judge Black's Report and Recommendation which are ripe for review. Plaintiff's objections essentially reiterate the arguments raised in his Statement of Specific Errors.

## II. Standard of Review

The relevant statute provides the standard of review to be applied by this Court in reviewing decisions by the ALJ. See

42 U.S.C. § 405(g).  The Court is to determine only whether the record as a whole contains substantial evidence to support the ALJ's decision.  "Substantial evidence means more than a mere scintilla of evidence, such evidence as a reasonable mind might accept as adequate to support a conclusion."  <u>LeMaster v. Secretary of Health & Human Serv.</u>, 802 F.2d 839, 840 (6th Cir. 1986) (internal citation omitted).  The evidence must do more than create a suspicion of the existence of the fact to be established.  <u>Id.</u>  Rather, the evidence must be enough to withstand, if it were a trial to a jury, a motion for a directed verdict when the conclusion sought to be drawn from it is one of fact for the jury.  <u>Id.</u>  If the ALJ's decision is supported by substantial evidence, the Court must affirm that decision even if it would have arrived at a different conclusion based on the same evidence.  <u>Elkins v. Secretary of Health & Human Serv.</u>, 658 F.2d 437, 439 (6th Cir. 1981).  The district court reviews <u>de novo</u> a magistrate judge's report and recommendation regarding social security benefits claims.  <u>Ivy v. Secretary of Health & Human Serv.</u>, 976 F.2d 288, 289-90 (6th Cir. 1992).

### III. <u>Analysis</u>

It is not disputed that Plaintiff was disabled as result of congestive heart failure from April 9, 2002 to January 18, 2005 because his impairment met § 4.02 of the listing of impairments.  Moreover, it is not disputed that Plaintiff's

congestive heart failure no longer met § 4.02 after January 18, 2005 because of the improvement his ejection fraction. Plaintiff's first argues, however, that the ALJ's determination that this improvement was related to his ability to work was erroneous.

Determining whether a disabiility has ended is a two-step process:

> The first part of the evaluation process [] focuses on medical improvement. The implementing regulations define a medical improvement as "any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled." 20 C.F.R. § 404.1594(b)(1). A determination of medical improvement "must be based on changes (improvement) in the symptoms, signs, and/or laboratory findings associated with your impairment(s)." And a medical improvement is only related to an individual's ability to work "if there has been a decrease in the severity . . . of the impairment(s) present at the time of the most recent favorable medical decision and an increase in your functional capacity to do basic work activities." 20 C.F.R. § 404.1594(b)(3).
>
> The second part of the evaluation process relates to ability to engage in substantial gainful activity. Here the implementing regulations incorporate many of the standards set forth in the regulations governing initial disability determinations. See 20 C.F.R. § 404.1594(b)(5) and (f)(7). The difference, of course, is that the ultimate burden of proof lies with the Secretary in termination proceedings.

Nierzwick v. Commissioner of Social Sec., 7 Fed. Appx. 358, 361 (6th Cir. 2001). Both the ALJ and Magistrate Judge Black correctly determined that the improvement in Plaintiff's ejection fraction was related to his ability to work because his

7

impairment no longer met the listing as a result of the improvement. As the Commissioner correctly observes, the Social Security regulations specifically state that "[i]f there has been medical improvement to the degree that the requirement of the listing section is no longer met or equaled, then the medical improvement is related to your ability to work." 20 C.F.R. § 404.1594(c)(3)(i). Therefore, Plaintiff's improved ejection fraction was related to his ability to work as a matter of law. Accordingly, Plaintiff's first objection is not well-taken and is **OVERRULED.**

Plaintiff's second objection essentially contends that the ALJ violated the treating physician rule in developing his RFC. Under the treating physician rule, opinions of physicians who have treated the claimant receive controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2). If the ALJ finds that either of these criteria have not been satisfied, he is required to apply the following factors in determining how much weight to give a treating physician's opinion: "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the

specialization of the treating source." Wilson v. Commissioner of Social Sec., 378 F.3d 541, 544 (6th Cir. 2004). The ALJ must give "good reasons" for rejecting the opinion of a treating physician. The ALJ's failure to comply with the "good reasons" rule is a procedural error which generally requires reversal even if the record otherwise supports the ALJ's determination. Rogers v. Commissioner of Social Sec., 486 F.3d 234, 242-43 (6th Cir. 2007); see also Rabbers v. Commissioner Social Sec. Admin., 582 F.3d. 647, 656 (6th Cir. 2009) (noting that the Wilson opinion left open the possibility that a de minimis violation of the "good reasons" rule can be a harmless error). The ALJ, however, is not required to give any weight to the conclusory opinions of treating physicians that the claimant is unable to work, since that determination is reserved for the Commissioner. Vance v. Commissioner of Social Sec., 260 Fed. Appx. 801, 804 (6th Cir. 2008).

Plaintiff's treating physicians were Dr. Jeffrey Jarrett and Dr. Ajay Reddivari and they both provided several conclusory disability opinions which were not entitled to any weight.[2] Dr. Jarrett did provide a physical assessment for work-

---

2   See Tr. 416 ("Patient is unable to work due to his cardiac problems."); Tr. 421 ("Presently he [Plaintiff] is unable to be involved in any gainful employment because of multiple medical conditions. It is unsure at this time whether he will be able to return to work in future but for the next two months he will be unable to work and I do not foresee that changing within the next two months."); Tr. 423 ("As to the ability for him to be

9

related activities form in which he indicated that Plaintiff can only stand or walk for one hour per day for twenty minutes at a time and that he can sit for only four hours per day. Tr. 424. Dr. Jarrett stated that the reason for these limitations is that Plaintiff has "very poor stamina." Id. The ALJ interpreted this comment to mean that Plaintiff's standing/walking and sitting limitations resulted from deconditioning and not from his impairments and, therefore, he gave no weight to it. Plaintiff argues that this interpretation was erroneous because, in context, Dr. Jarrett was indicating that his poor stamina was related to his multiple medical conditions. Even if the ALJ's interpretation of Dr. Jarrett's opinion was erroneous, there was substantial evidence to support his determination that the opinion was contradicted by other evidence in the record. As the ALJ noted, pursuant to the NYHA guidelines, Dr. Reddivari categorized Plaintiff's congestive heart failure as imposing only slight physical limitations. Additionally, this opinion was inconsistent with the opinion of the state examining physician,

---

employed I would say based on a reasonable degree of medical certainty that his employment ability is extremely poor. With his multiple restrictions from his medical difficulties, I do not see that he could even perform on a daily basis light or sedentary type work. I have watched Jack deteriorate over the last nine years to the point that he is unemployable and I do not foresee any time in the future that this would possibly change."); Tr. 425 ("This patient has significant illnesses including heart disease and diabetes which restrict any type of employment. This is not going to change.").

who determined that Plaintiff can stand/walk and sit for about six hours in an eight hour day. Tr. 385. Moreover, Dr. Jarrett's opinion was contradicted by Plaintiff's self-reported activities, such a building a garage and taking family vacations. Therefore, the ALJ's decision to reject Dr. Jarrett's opinion was supported by substantial evidence.

Plaintiff contends that in developing his RFC, the ALJ ignored Dr. Reddivari's statement that his left ventricle remains severely dysfunctional. This argument suggests that Plaintiff claims that he is disabled under the Social Security regulations by the mere fact of his left ventricular dysfunction. A social security claimant, however, is only presumptively disabled when his impairment satisfies one of the listed impairments, Bledsoe v. Barnhart, 165 Fed. Appx. 408, 410 (6th Cir. 2006), and it is not disputed that he no longer met the listing for congestive heart failure after January 18, 2005. In any event, as stated before, Dr. Reddivari also indicated that Plaintiff's congestive heart failure imposed only slight physical limitations, which is inconsistent with Plaintiff's argument that his left ventricular dysfunction is completely disabling. Consequently, even if the ALJ did ignore Dr. Reddivari's comment about Plaintiff's left ventricle, it was a harmless error because there was a substantial basis in the record to conclude that his ventricular

dysfunction does not substantially limit Plaintiff's ability to work.

Finally, Plaintiff contends that the ALJ erroneously substituted his own medical opinion for that of the treating physicians by equating an improved ejection fraction with an ability to work. The ALJ, however, clearly did not equate an improved ejection fraction with an ability to work. What the ALJ did appropriately do was find that Plaintiff's improved ejection fraction was consistent with an improved ability to work, which is what the Social Security regulations require. As Magistrate Judge Black observed in his Report and Recommendation, the ALJ actually considered a whole range of evidence in assessing Plaintiff's claimed disability, including the competing and sometimes contradictory medical opinions, the results of medical tests, Plaintiff's activities, and the absence of side-effects from his medications. In short, the ALJ thoroughly considered all of the available evidence, and not just the improved ejection fraction, in concluding that Plaintiff's disability ended on January 19, 2005.

Accordingly, Plaintiff's second objection is not well-taken and is **OVERRULED.**

## Conclusion

In short, the ALJ's decision was clearly supported by substantial evidence. Accordingly, the Plaintiff's objections to

12

Magistrate Judge Black's Report and Recommendation are not well-taken and are **OVERRULED.**  The Court **ADOPTS** the Report and Recommendation.  The decision of the ALJ determining that Plaintiff's disability ended on January 19, 2005 under the Social Security regulations is **AFFIRMED.**  This case is closed on the docket of the Court.


      **IT IS SO ORDERED**


Date February 23, 2010              s/Sandra S. Beckwith
                                      Sandra S. Beckwith
                             Senior United States District Judge